#400

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BB&T COMMERCIAL EQUIPMENT CAPITAL CORP. F/K/A SUSQUEHANNA COMMERCIAL FINANCE, INC. | : : : : | |
| Plaintiff | : | Civil Action |
| vs. | : | No. 17 3387 |
| | : | |
| HAPPY CLAM HOLDINGS, INC. AND RYAN HUMPHREY AND STEPHANIE HUMPHREY, i/j/s | : : | |
| Defendants | : : | |

## COMPLAINT

1. Plaintiff, BB&T Commercial Equipment Capital Corp. F/K/A Susquehanna Commercial Finance, Inc., ("Plaintiff") is a corporation in good standing under the Laws of the Commonwealth of Pennsylvania, with its principal place of business located 2 Great Valley Parkway, Suite 300, Malvern, Pennsylvania, 19355.

2. Defendant, Happy Clam Holdings, Inc., ("Company") is a North Carolina Corporation with a place of business located at 134 Myrtle Ave., Carolina Beach, NC 28428.

3. Defendant, Ryan Humphrey, is an individual who resides at 134 Myrtle Ave., Carolina Beach, NC 28428.

4. Defendant, Stephanie Humphrey, is an individual who resides at 134 Myrtle Ave., Carolina Beach, NC 28428.

5. The matter in controversy herein exceeds, exclusive of interest and costs, the sum of Seventy Five-Thousand Dollars ($75,000.00). Jurisdiction is based on diversity of citizenship, with a venue proper pursuant to 28 USC 1391.

6. On or about December 8, 2015, Defendant Happy Clam Holdings, Inc. executed a



6. On or about December 8, 2015, Defendant Happy Clam Holdings, Inc. executed a "Loan and Security Agreement" with Plaintiff to finance certain equipment, for eighty-three (83) monthly installments in the amount of $3,291.59 each (plus applicable tax), with a true and correct copy of Loan and Security Agreement being set forth as Exhibit "A" hereto.

7. Surety Ryan Humphrey executed a Surety Agreement on or about December 8, 2015 in favor of Plaintiff to induce Plaintiff to enter into the Loan and Security Agreement and otherwise become a creditor of Company. A true and correct copy of the Surety Agreement hereto and made a part hereof, marked as Exhibit "B" hereto.

8. Surety Stephanie Humphrey executed a Surety Agreement on or about December 8, 2015 in favor of Plaintiff to induce Plaintiff to enter into the Loan and Security Agreement and otherwise become a creditor of Company. A true and correct copy of the Surety Agreement hereto and made a part hereof, marked as Exhibit "C" hereto.

9. Company made 17 payments under the terms of the Loan and Security Agreement but defaulted under the Loan and Security Agreement by failing to pay the payment due June 17, 2017 and all payments due thereafter.

10. By virtue of Company's default under the Loan and Security Agreement, Defendants are obligated for the 66 remaining payments of $3,291.59 for a total gross balance of $217,244.94, plus accrued late charges in the amount of $658.32, plus attorney fees of 15%, all totaling $250,588.75 plus interest and applicable late charges (less any applicable discount for unmatured interest as of the judgment date).

11. Jurisdiction is proper in the Eastern District of Pennsylvania in this action by virtue of: (a) the failure of monies to be paid by the Defendants to Plaintiff at its place of business in Chester County, Pennsylvania, where such payments are due, (b) express provisions contained in the

defaulted under the Loan and Security Agreement and Surety Agreements by failing to pay the payment due wherein Defendants consented to jurisdiction in any state or federal court of competent jurisdiction in the Commonwealth of Pennsylvania, being the United States District Court for the Eastern District of Pennsylvania in actions enforcing those agreements.

## COUNT I

### PLAINTIFF V. HAPPY CLAM HOLDINGS, INC.

12. Paragraphs 1 through 11 are incorporated herein as though they were more fully set forth at length.

WHEREFORE, Plaintiff demands judgment against Defendant, Happy Clam Holdings, Inc in the sum of $250,588.75 plus interest and applicable late charges (less any applicable discount for unmatured interest as of the judgment date).

## COUNT II

### PLAINTIFF V. RYAN HUMPHREY

13. Paragraphs 1 through 12 are incorporated herein as though they were more fully forth at length.

WHEREFORE, Plaintiff demands judgment against Defendant, Ryan Humphrey, in the sum of $250,588.75 plus interest and applicable late charges (less any applicable discount for unmatured interest as of the judgment date).

## COUNT III

### PLAINTIFF V. STEPHANIE HUMPHREY

14. Paragraphs 1 through 13 are incorporated herein as though they were more fully forth at length.

WHEREFORE, Plaintiff demands judgment against Defendant, Stephanie Humphrey, in

the sum of $250,588.75 plus interest and applicable late charges (less any applicable discount for unmatured interest as of the judgment date).

Dated: July 26, 2017

ATTORNEY FOR PLAINTIFF

BARBARA LANZA FARLEY,
A PROFESSIONAL CORPORATION

BY:/s/Barbara L Farley, Esquire
Barbara L. Farley, Esquire
PO Box 53659
Philadelphia, PA 19105
215-923-9696
Fax 856-428-3995
PA Atty. ID 18845
blfpclaw@gmail.com

## LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT ("Agreement"), dated as of December 8, 2015, is made and entered into by and between Susquehanna Commercial Finance, Inc., a Pennsylvania corporation, having its place of business at 2 Country View Road, Suite 300, Malvern, Pennsylvania 19355 ("Lender"), and HAPPY CLAM HOLDINGS, INC. a North Carolina Corporation, having its principal place of business at 134 MYRTLE AVE, CAROLINA BEACH, NC 28428-6824 ("Borrower"). (The individual parties hereto are hereinafter sometimes collectively referred to the "Parties" and individually referred to as a "Party").

Recitals:

Whereas, Borrower, (or its principal) is a franchisee of Papa Murhphy's("Franchisor") with Borrower (or its principal) and Franchisor being parties to a franchise agreement (the, "Franchise Agreement") and has requested Lender to provide financing in the amount of $214,600.00 (defined below as the "Loan") to enable Borrower to repay certain indebtedness previously incurred by Borrower in favor of TD Bank and Wells Fargo (the "Refinanced Indebtedness"), which Refinanced Indebtedness is in the total amount of $214,600.00 of which this Loan shall be applied, and Lender is willing to provide Borrower with such financing with respect to the "Refinanced Indebtedness", in accordance with the terms of this Agreement.

NOW THEREFORE, in consideration of the promises and the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. <u>Recitals</u>. The foregoing Recitals are incorporated herein as though more fully set forth at length.

2. <u>Refinanced Indebtedness</u>. With the foregoing Recitals Lender hereby agrees to finance for Borrower, and Borrower hereby agrees to repay Lender under the terms and conditions set forth herein for the refinancing of the Refinanced Indebtedness. The following are required documents that must be executed at or prior to closing in connection with this Loan, and received by Lender as a condition for Lender making the Loan:

    A. Proof of execution of Franchise Agreement;
    B. Surety of Ryan & Stephanie Humphrey
    C. Evidence satisfactory to Lender that the amount required to pay off the Refinanced Indebtedness, being the sum of $146,632.54 payable to TD Bank: Loan Account #2908440-0501.
    D. Evidence satisfactory to Lender that the amount required to pay off the Refinanced Indebtedness, being the sum of $67,967.46 payable to Wells Fargo Business Line of Credit #5474648805144534.
    E. Lien Termination from TD Bank after payoff
    F. Landlord Waiver for both locations
    G. Facility Leases for both locations
    H. Subordination Agreement from BRM Associates #1, LLC

3. <u>Loan</u>. A. **Loan Amount.** Subject to the terms and conditions of this Agreement, and the satisfaction of all requirements set forth in this Agreement, Lender hereby advances to, or for the benefit of, Borrower for the sole purpose of paying the Refinanced Indebtedness, and Borrower accepts for such sole purpose under the terms of this Agreement, advances (collectively, the "Loan") in an aggregate principal amount of: Two Hundred Fourteen Thousand Six Hundred and 00/100 Dollars ($214,600.00). For purposes hereof, the date of funding of the Loan shall be referred as the "Funding Date."

    B. **Repayment.** Borrower hereby unconditionally promises to pay to the order of Lender said principal sum in lawful money of the United States with interest at the rate of interest of 7.69% per annum ("Rate") (based upon a 360 year) from the date hereof to maturity on the principal hereof remaining from time to time unpaid, such principal and interest to be paid in monthly installments as set forth below, commencing the date set forth below and on the same date of each month thereafter until paid in full, such installments to be applied first to accrued and unpaid interest and other amounts payable hereunder and the balance to unpaid principal. All payments hereunder shall be made to Lender or its assignee at the address specified by Lender or such assignee. The first payment shall be due on execution of this Agreement.

Number of Payments: 1 payment due on execution, followed by 83 remaining payments the first of which shall be due 30 days from the date of funding, and successive payment to be due the same date of each month thereafter.
Monthly Payment Amount: $3,291.59
Total Amount of Payments: $276,493.56

    C. **Prepayment of Loan.** On and after the date of funding of this Loan ("Funding Date"), the Borrower shall be entitled to pay all, but not any portion, of the Loan subject to its additional payment to the Lender of a prepayment fee equal to the product of (A) the Prepayment Fee Percentage and (B) the outstanding principal amount of the Loan. "Prepayment Fee Percentage" means, with respect to any prepayment, (i) if such prepayment occurs on or prior to the first anniversary of the Funding Date, 8.0%, (ii) if such prepayment occurs after the first anniversary of the Funding Date and on or prior to the second anniversary of the Funding Date, 4.0%, (iii) if such prepayment occurs after the second anniversary of the Funding Date and on or prior to the third anniversary of the Funding Date, 3.0% and (iv) if such prepayment occurs after the third anniversary of the Funding Date and on or prior to the fourth anniversary of the Funding Date, 2.0% and (v) if such prepayment occurs after the fourth anniversary of the Funding Date and on or prior to the fifth anniversary of the Funding Date, 1.0%.

4. <u>Security</u>. A. **Security Interest Granted.** To secure the prompt repayment of the amounts due hereunder (the "Payments") and all other obligations of Borrower to Lender, whether now existing or hereafter arising, together with all other obligations of Borrower hereunder (collectively, "Obligations"), Borrower hereby grants to Lender a security interest in all assets of the Borrower, whether now owned or hereafter acquired, including but not limited to the following property of Borrower wherever located, and products and proceeds thereof: (a) all goods

(including but not limited to all machinery, equipment, fixtures, appliances, furniture and inventory); (b) all accounts, contract rights, and accounts receivable now owned or hereafter in existence and all proceeds thereof and all returned or repossessed goods arising from or relating to any of said accounts or rights; (c) all substitutes and replacements for, accessions, attachments, and other additions to, and tools, parts, and equipment used in connection with the above property; (d) all property similar to the above hereafter acquired by Borrower; (e) all general intangibles, franchise rights, distributorship rights trade names, copyrights, licenses and good will of (*provided, however,* that the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the Pennsylvania Uniform Commercial Code ("UCC"); together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of all of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral"). Borrower covenants to keep the Collateral free and clear of all liens and encumbrances, except for Lender's security interest therein. The Security Interest and all rights of Lender under this Agreement, and all obligations of Borrower under this Agreement, shall be absolute and unconditional without regard to: (a) any change in the time, manner or place of payment of the Obligations, including any amendment or waiver of, or consent to, any departure from the terms governing the Obligations; (b) any exchange, release or non-perfection of any Collateral, including any release or amendment or waiver of, or consent to, or departure from any guaranty, for the Obligations; or (c) any other circumstance that might otherwise allow Borrower to discharge Borrower's duties in respect of the Obligations or in respect of this Agreement.

B. **Priority of Security Interest.** The security interest granted to Lender hereunder shall be a first priority security interest, superior in lien and priority to the lien and security interest of all other persons.

5. **Representations and Warranties of Borrower.** (a) Borrower is a corporation duly organized, validly existing and in good standing under the laws of the state stated above and has qualified to do business in each and every jurisdiction where the failure of Borrower to so qualify would have a material and adverse impact of Borrower's ability to perform under this and/or any other document executed in connection with this Agreement (collectively, "Loan Documents"). Borrower has all requisite power and authority to own, lease and operate its properties, to carry on its business as now being conducted, to operate the business to be acquired, and to execute, deliver and perform the Loan Document. All of Borrower's federal, state, local and foreign income, profits, franchise, sales, use, occupation, property, excise and other tax returns and tax reports, if any, required to be filed with respect to the business and assets of Borrower have been filed, as of, at a minimum, the date hereof with the appropriate governmental agencies. (b) The execution, delivery and performance by Borrower of this Agreement and all other writings relating hereto and thereto have been duly and validly authorized by Borrower. No consent or approval of or notification to any party, other than any consent or approval that has been obtained, is required in connection with the execution, delivery and performance by Borrower of any Loan Document or the consummation of the transactions contemplated hereby or thereby. (c). No litigation, suits, claims, and/or judicial or administrative proceedings of any nature is pending or, to the best knowledge of Borrower, threatened against Borrower or Borrower's property, the effects of which, in Lender's judgment, would have a material adverse effect on Borrower, its business, its financial condition. (d) Borrower represents that there are no liens on any Collateral other than those granted in favor of Lender. (e) Borrower is not in any violation of federal, state or local laws, ordinances or regulations pertaining to this Agreement, or any of the Loan Documents and/or any of the transactions contemplated in any of the fore going. (f) Borrower represents that the Loan Documents do not violate any agreements to which Borrower is a party or by which Borrower or its assets are bound. (g) No representation or warranty by Borrower contained in this Agreement, and no statement contained in any certificate, schedule, exhibit, list or other writing furnished to Lender in connection with this transaction contains any material untrue statement of fact or omits to state any material fact necessary in order to make the statements contained herein or therein not materially misleading. All copies of all writings furnished to Lender hereunder, or in connection with the transactions contemplated hereby (including but not limited to the Application and Credit or Financial Information submitted by Borrower to Lender), are true and complete in all material respects. All schedules and exhibits to this Agreement are true and complete in all material respects.

6. **Covenants of Borrower.** (A) Affirmative. Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will: (a) Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any guarantor ("Guarantor") under the Loan Documents which could materially affect the financial condition of Borrower or the financial condition of any Guarantor; (b) Furnish Lender with such financial information and statements, as Lender may request from time to time; (c) use the Collateral in a careful and proper manner; (d) At all reasonable times during business hours allow Lender or its authorized agents to inspect the Collateral; (e) At all times Lender is authorized to share any information regarding this Agreement, including any payment history, with the Franchisor and/or Borrower's landlord; (f) At Borrower's own cost and expense, keep the Collateral in good repair, condition and working order and furnish any and all parts, mechanisms and devices required to keep the Collateral in good mechanical and working order, and (g) Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loan and to perfect all security interests of the Lender in the Collateral. (B) Negative. Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender: (a) sell, dispose of, or agree to sell, dispose of or lease or license to others or agree to so lease or license, any of the Collateral except for sales of inventory in the ordinary course of its business; (b) merge or consolidate with any partnership, corporation or other entity of any nature, change its state of formation or its corporate structure, change either its name or the address of its principal offices, or dissolve, liquidate or wind up its affairs, or sell, lease, transfer or otherwise dispose of a significant portion of its assets, or agree to do any of the foregoing; (c) engage in any business activities substantially different than those in which Borrower is presently engaged; (d) make any alterations, additions or improvements to the Collateral, other than as required in the normal course of business. (C) Laws. (1)Borrower shall comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral ("Applicable Laws") including, without

limitation: (i) the Americans With Disabilities Act, (ii) all laws and regulations relating to environmental conditions, contamination and controls; (2) Borrower has been advised by Lender that the USA Patriot Act establishes minimum standards of account information to be collected and maintained by Lender, and that to help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account; and specifically, this means that when Borrower executes this Agreement, Lender may ask for Borrower's name and address, the date of birth of the officers executing this Agreement, and other information that will allow Lender to identify Borrower; and that Lender may also ask to see the driver's license or other identifying documents of the officers of Borrower executing this Agreement. (3) Borrower is and will remain in full compliance with all Applicable Laws, including without limitation (i) ensuring that no person who owns a controlling interest in or otherwise controls Borrower is or shall be (A) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation, or (B) a person designated under Sections 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations. (D) Franchise Matters. In the event that the Borrower is the "Franchisee" under the Franchise Agreement: (i) Borrower warrants and represent that there is no default or event of default as of the date hereof under the Franchise Agreement and/or under any other agreement between Borrower and Franchisor (and no condition which if uncured would constitute a default or event of default); (ii) Borrower shall comply with all terms and conditions of the Franchise Agreement, and all other agreements, whether now or hereafter existing, between Borrower and Franchisor (collectively "Franchisor Documents"), shall not materially modify any of the Franchise Documents without Lender's prior written consent, (not to be unreasonably withheld), and shall notify Lender immediately in writing of any default in connection with any such Franchisor Documents; (iii) Borrower shall not transfer its interest under the Franchise Agreement to any other person, and shall not merge with any person, corporation, Limited Liability Company or other entity that would change the ownership of Borrower's interest under the Franchise Agreement (or any of them) without Lender's prior written consent, to be determined in Lender's sole and absolute discretion.

7. **DISCLAIMER OF WARRANTIES.** LENDER MAKES NO EXPRESS OR IMPLIED WARRANTIES AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR CONDITION OF ANY ITEM OF THE COLLATERAL, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS QUALITY, CAPACITY OR WORKMANSHIP, PATENT INFRINGEMENTS OR LATENT DEFECTS, OR COMPLIANCE OF THE COLLATERAL WITH THE REQUIREMENTS OF ANY LAW, REGULATION, SPECIFICATION OR AGREEMENT RELATING THERETO.

8. **Insurance.** Borrower shall keep the Collateral insured against theft and all risks of loss or damage from every cause whatsoever for not less than the replacement cost of the Collateral and shall carry public liability insurance, both personal injury and property damage, covering the Collateral and its use, in minimum amounts of coverage, policy provisions and carriers acceptable to Lender. Such insurance for theft, loss or damage shall name Lender as "Lender- "Loss Payee," and such liability insurance shall name Borrower as "Named Insured" and Lender as "Additional Insured" and provide Lender with 30 days prior written notice of cancellation or termination of such policy(ies). Borrower shall pay the premiums therefore, be responsible for all deductible portions thereof, and shall deliver to Lender upon request evidence satisfactory to Lender of such insurance coverage: however, Lender shall be under no duty to ascertain the existence of or to examine such insurance policies or to advise Borrower in the event such insurance coverage shall not comply with the requirements thereof. If Borrower fails to obtain and maintain in effect the requisite insurance policies, Lender, with no prejudice or waiver of any other right hereunder or provided by law, may at its option obtain insurance to be issued covering Lender's interest in the Collateral for the term of this agreement, including all extensions and/or renewals. Lender may add the costs of acquiring and maintaining such insurance and related fees for Lender's services in placing and maintaining such insurance (collectively, "Insurance Charge") on which Lender may earn a profit, to the other amounts due Lender by Borrower under the terms hereof. Such insurance coverage may duplicate the coverage under Borrower's existing policies. The Insurance Charge shall be paid in equal installments added to remaining payments. Nothing in this agreement will create an insurance relationship between Lender and any other person. Borrower acknowledges that Lender is not required to secure or maintain any insurance, and Lender will not be liability to Borrower if Lender terminates any insurance coverage that Lender arranges.

9. **Risk of Loss.** Borrower hereby assumes and shall bear the entire risk of loss or destruction of or damage to the Collateral from any cause whatsoever, whether or not insured. No such loss or damage shall relieve Borrower from any obligation under this Agreement. In the event of damage to, loss or destruction of the Collateral, Borrower shall notify Lender in writing of such fact and shall, at the option of Lender, (a) place the Collateral in good condition and working order, (b) replace the Collateral with like Collateral in good condition and working order, in which replacement Collateral Borrower grants a security interest to Lender, or (c) pay to Lender the total of all unpaid principal balance and accrued interest due hereunder. Any insurance proceeds received with respect to the Collateral shall be applied, in the event option (c) is elected, in reduction of the then unpaid Obligations of Borrower to Lender, if not already paid by Borrower, or, in the event option (a) or (b) is elected, to reimburse Borrower for the costs of repairing, restoring or replacing the Collateral upon receipt by Lender of satisfactory evidence that such repair, restoration or replacement has properly been completed.

10. **Liens and Taxes**. Borrower shall keep the Collateral free and clear of all levies, liens and encumbrances and shall pay all license fees, registration fees, assessments, charges and taxes (federal, municipal and state, including personal property taxes) which may now or hereafter be imposed upon the ownership, leasing, sale, possession or use of the Collateral. If Borrower fails to pay any of said fees, assessment, charges or taxes, Lender shall have the right, but shall not be obligated, to pay the same. In that event, the cost thereof shall be repayable to Lender as additional payments, and failure to repay the same shall constitute a default hereunder.

11. **Indemnity.** Borrower assumes liability for and agrees to indemnify, defend (if requested by Lender) and keep harmless Lender from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs and expenses, including court costs and Lender's

attorney's fees, of whatever kind imposed on, incurred by or asserted against Lender in any way relating to the manufacture, selection, purchase, ownership, delivery, Agreement, possession, use, operation, condition, repair, storage, return or disposition of the Collateral (collectively, "Claims"), including without limitation: (a) any Claim alleging latent or other defects whether or not discoverable by Lender or Borrower, (b) any Claim arising out of strict liability in tort; and (c) any and all Claims arising from (i) the existence or the continuation of the existence of an environmental contamination (including without limitation, the air, ground, water or any surface) at, in, by, from or related to any Collateral, (ii) the environmental aspect of the transportation, storage, treatment or disposal of materials in connection with the operation of any Collateral, or (iii) the violation, or alleged violation, of any environmental law, permits or licenses of, by or from any governmental authority, agency or court relating to environmental matters connected with any Collateral. The terms of this Paragraph shall survive expiration or termination of this Agreement and repossession or return of any item (or all of) the Collateral.

**12. Default.** Each of the following occurrences shall constitute an event of default under this Agreement (herein called "Event of Default"): (i) Borrower fails to pay any payments or other amount herein provided within five (5) days after the same is due and payable; (ii)Borrower shall default under any other agreement with Lender (or any affiliate of Lender) including payment when due of any indebtedness of Borrower to Lender (or any affiliate thereof) arising independently of this Agreement; (iii)any representation or warranty by Borrower set forth in this Agreement or made to Lender in any financial statements or reports submitted to Lender by or on behalf of Borrower shall prove materially false or misleading; (iv)Borrower fails to observe, keep or perform any other provision of this Agreement required to be observed, kept or performed by Borrower (including but not limited to the giving notice as herein provided); (v)Borrower or any guarantor of the obligations under this Agreement shall (A) be or become insolvent; (B) voluntarily file, or have filed against it involuntarily, a petition under the United States Bankruptcy Code or any other state or federal insolvency act; (C) if a corporation, partnership, or organization, be dissolved or liquidated or, if a partnership, suffer the death of a partner or, if an individual, die; or (D) ceases doing business as a going concern; (vi)if Borrower is a corporation, more than 50% of the shares of voting stock of Borrower shall become owned by a shareholder or shareholders who were not owners of voting stock of Borrower on the date of this Agreement or, if Borrower is a partnership more than 50% of the partnership interests in Borrower shall become owned by a partner or partners who were not partners of Borrower on the date of this Agreement or if Borrower is a Lender more than 50% of the membership interests in Borrower shall become owned by a member or members who were not members of Borrower on the date of this Agreement; or (vii) Borrower shall consolidate with or merge into, or sell all or substantially all of its assets to, any individual, corporation, or other entity; (viii) there occurs a material adverse change in Borrower's financial condition, or in the financial condition of any guarantor of Borrower; (ix) Borrower shall default under any term of condition of any agreement with Franchisor which is not cured after any required notice and passage of any applicable cure period.

**13. Remedies.** Upon the occurrence of a default hereunder or "Event of Default", Lender shall, in addition to any other remedy provided by law, have the following rights and remedies to exercise at its sole discretion, which shall be cumulative and not to the exclusion of any other remedies at law or in equity: (a) declare to be immediately due and payable, without additional notice presentment or demand, an amount equal to the total of (i) all principal remaining unpaid and all accrued interest, late charges and other fees due, plus all expenses of collection and incurred in enforcing this Agreement ("Default Balance"); plus (ii) interest on the Default Balance at a rate equal to the lower of (A) 12% per annum or (B) the highest amount allowed under law, ("Default Rate"); (b)exercise and enforce any or all rights and remedies available upon default to a creditor under the UCC, including but not limited to the right to take possession of any Collateral, proceeding without judicial process or by judicial process, and the right to sell, lease or otherwise dispose of any or all of the Collateral , and in connection therewith, the proceeds of such sale or lease shall be applied to the Default Balance due Lender hereunder and plus costs and expenses of retaking possession of the Collateral, all other sums payable by Borrower to Lender pursuant to the terms hereof, applicable late charges, plus attorney's fees and court costs incurred; (c) pursue and seek to enforce any other rights or remedies available to Lender by law or agreement, whether against Borrower or against any other person or property.

**14. Assignment.** Borrower shall not assign this Agreement, nor sell, pledge, hypothecate, lend, subject or otherwise dispose of the Collateral without prior written consent of Lender. Lender may assign this Agreement and all right, title and interests of Lender therein and in the Collateral and to all payments due or to become due Lender hereunder. Borrower will recognize such assignment and furnish assignee with a written acknowledgement that this Agreement is in full force and effect and the Borrower is not entitled to any counterclaim or setoff.

**15. Title to the Collateral.** Lender has a security interest in the Collateral, but shall not be deemed to have any ownership interest, nor shall it incur any ownership liability as a result of its financing of the Collateral.

**16. Late Payments/NSF Checks.** If Borrower fails to pay when due any payment or other amount required herein to be paid to Lender, Borrower shall pay to Lender a Service Charge of Ten percent (10 %) of each installment or part thereof for which said payment or other amount shall be delinquent, or ten ($10.00) dollars, whichever is greater plus interest on such delinquent payment or other amount from the due date thereof until paid at the maximum rate allowable by law, not to exceed twelve percent (12%). If a payment by Borrower is returned based upon insufficient or unavailable funds in the account upon which such payment was drawn, a minimum insufficient funds ("NSF") charge of thirty-five ($35.00) dollars will be applied as an Additional Payment by Lender.

**17. Notices.** For the purpose of this Agreement any notices required to be given, shall be given to the parties hereto in writing by certified mail at the address herein set forth, or to such other addresses as each party may substitute by notice to the other, which notice shall be effective as to Lender upon its receipt by Lender and shall be effective as to Borrower when deposited in U.S. Mail duly addressed, postage prepaid.

**18. Waivers.** The omission by the Lender at any time to enforce any default or rights reserved to it or to require performance of any of the terms, covenants, or provisions hereof by the Borrower at any time designated, shall not be a waiver of any such default or right to which the Lender is entitled, nor shall it in any way affect the right of the Lender to enforce such provisions thereafter. The Lender may exercise all remedies simultaneously, pursuant to the terms hereof, and any such action shall not operate to renew the Agreement of the Borrower until the full amount of the payments due and to become due and all other sums to be paid hereunder shall have been paid.

**19. Filing.** Lender and Borrower agree that a reproduction of this Agreement may be filed as a financing statement and shall be sufficient as a financing statement under the Uniform Commercial Code. Borrower irrevocably appoints Lender, its officers and employees, as Borrower's attorney-in-fact, with full power in Lender's or Borrower's name to execute and file: (a) any financing statements relating to the Collateral; (b) any and all instruments and documents relating to titling the Collateral (including but not limited to vehicles); and (c) other documents as Lender deems necessary or advisable hereunder. Borrower shall execute or obtain and deliver to Lender, upon Lender's request, such instruments, financing statements and assurances, as Lender deems necessary or advisable for the protection or perfection of this Lease and Lender's rights hereunder and will pay all costs incident thereto.

**20. Time.** Time is of the essence in the Agreement and each and all of its provisions.

**21. Parties Bound.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns. If there be more than one Borrower named in this Agreement, the liability of each shall be joint and several.

**22. Legal Construction.** If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

**23. No Offset.** This Agreement is a net Agreement and all of Borrower's obligations under this Agreement shall be paid and performed by Borrower irrespective of any setoff, counterclaim, recoupment, defense or other right which Borrower may have against Lender, the vendor or supplier of the Collateral or any other person.

**24. No Third Party Beneficiary.** Lender and Borrower agree that this Agreement is not intended to benefit any person or entity not a signatory hereto.

**25. Business Purpose.** Borrower hereby warrants and represents that the Collateral will be used only for Borrower's business purposes, and Borrower acknowledges that Lender has relied upon this representation in entering into this Agreement.

**26. Processing Fee.** Borrower agrees to pay to Lender the fee for processing this Agreement which is currently in effect and which is subject to change without notice.

**27. Entire Agreement.** No promises, warranties, representations, guarantees or other agreements, either expressed or implied, have been given by either party to the other, with respect to this Agreement or to the financed Collateral, except as contained herein. This Agreement contains the entire agreement between the parties hereto with respect to the financed Collateral.

**28. Consent to Jurisdiction.** This Agreement shall be construed under and in accordance with the laws of the Commonwealth of Pennsylvania. All judicial proceedings brought against Borrower with respect to this Agreement and the Loan Documents may be brought in any state or federal court of competent jurisdiction in the Commonwealth of Pennsylvania, and by execution and delivery of this Agreement, Borrower accepts for itself and in connection with its properties, generally and unconditionally, the nonexclusive jurisdiction of the aforesaid courts, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement. Borrower irrevocably waives any right it may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this Section.

**29. Waiver of Jury Trial.** EACH OF THE PARTIES TO THIS AGREEMENT HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION OR THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED.

IN WITNESS WHEREO, each party hereto has caused its duly authorized representative to execute and deliver this Loan Agreement as of the date first above written.

SUSQUEHANNA COMMERCIAL FINANCE, INC.

By: _/s/ Jeffrey Nicholas_
Print Name: Jeffrey Nicholas
Title: EVP
Date: _____

HAPPY CLAM HOLDINGS, INC.

By: _/s/ Stephanie Humphrey_
Print Name: Stephanie Humphrey
Title: President
Date: 12/8/2015

Federal Tax ID #: 27-1015278

## AMENDMENT TO LOAN AND SECURITY AGREEMENT

Lender: SUSQUEHANNA COMMERICAL FINANCE, INC. ("Lender")
Borrower: HAPPY CLAM HOLDINGS, INC.
Contract No.: 152999 ("Contract")
Equipment: ALL DEBTOR ASSETS

This Amendment to Loan and Security Agreement ("Amendment") shall amend the above referenced Contract and all other documents by and between Lender and Borrower executed in connection with the Contract together with all guarantees executed by guarantors (collectively, "Contract Documents").

1   The Contract Documents are amended as follows:
Paragraphs 2 C & D are amended and restated in their entirety as follows:
   C. Evidence satisfactory to Lender that the amount required to pay off the Refinanced Indebtedness, being the sum of $146,681.16 payable to TD Bank: Loan Account #2908440-0501.

   D. Evidence satisfactory to Lender that the amount required to pay off the Refinanced Indebtedness, being the sum of $67,918.84 payable to Wells Fargo Business Line of Credit #5474648805144534

2   All terms and conditions of the Contract Documents not expressly modified by this Amendment and not inconsistent with this Amendment shall be and remain in full force and effect. In the event of conflict between the terms of this Amendment and the terms of the Contract Documents, the terms of this Amendment shall prevail. This represents the entire understanding of the Lender and Borrower as to the amendment and modification of the Contract Documents, and all prior discussions, memorandum, agreements and other documents on the subject matter are merged herein. No modifications shall be permitted except written modifications which shall be signed by Lender and Borrower in order to be effective. The parties (including all guarantors signing below, if any) intend and agree that a carbon copy, photocopy, PDF, or facsimile of this Amendment with their signature thereon shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an original-signature document and writing for all purposes, including all matters of evidence and the "best evidence" rules.

IN WITNESS WHEREOF, the parties hereto have to set their hands and seals to this Amendment and acknowledge receipt of a true copy hereof on the date(s) indicated below.

BORROWER: HAPPY CLAM HOLDINGS, INC.
(Print name of company)

☒ _Stephanie Humphrey_
    (Signature)

⇨ _Stephanie Humphrey_    12/15/15
    (Print name)            (Date)

The undersigned Guarantor(s) hereby agree to the provisions of the within amendment and acknowledge that the above referenced Guaranty remains in full force and effect.

☒ _____    Dated: 12/15/15
RYAN HUMPHREY

☒ _Stephanie Humphrey_          Dated: 12/15/15
STEPHANIE HUMPHREY

ACCEPTED BY LENDER:
_____  EVP  _____
(Signature)              (Title)    (Date)

## SURETY AGREEMENT

INTENDING TO BE LEGALLY BOUND and to induce SUSQUEHANNA COMMERCIAL FINANCE, INC., a Pennsylvania corporation with an office at 2 Country View Road, Suite 300, Malvern, PA 19355 ("SCF"), and in consideration of SCF's grant of credit accommodations extended now or in the future to HAPPY CLAM HOLDINGS, INC. (herein called "Customer"), in transactions where Customer is obligor, whether: (a) as a lessee under any lease agreements, master lease agreements (together with all schedules executed in connection with such master lease agreements), agreements granting lease availability or credit, and all other agreements related to the transactions contemplated in connection with all such lease agreements (as well as riders to such agreements); and/or (b) as a borrower, debtor, obligor, or other recipient of credit under the terms of any notes, loan agreements, security agreements, "Commercial Finance Agreements", equipment finance agreements conditional sales agreements (as well as riders to such agreements), instruments, documents, mortgages, assignments or other contracts or arrangements whereby SCF shall grant credit or advance funds; and/or (c) under any agreement of guaranty or suretyship in favor of SCF, where Customer is a surety or guarantor guaranteeing or acting as surety with respect to the performance of obligations to SCF by another obligor (with the transactions described in (a), (b) and (c) being referred to as "SCF Transactions"), whether such SCF Transactions have occurred in the past or contemporaneously with the execution of this Surety Agreement, or shall arise in the future, and whether the agreements evidencing the SCF Transactions, together with all related guaranty agreements, (to be referred collectively herein as "SCF Agreements") have been executed, or shall be executed by Customer at any time in the future, the undersigned (individually and collectively referred to as "Surety", whether it be one or more persons):

1.  Agrees to unconditionally, absolutely and irrevocably becomes surety to, and guarantees to SCF and to its successors, endorsees and assigns for the performance of the following obligations: (a) the prompt payment in full of all indebtedness, liability or liabilities of any and every kind and nature by the Customer as required under the terms of the SCF Agreements and performance of all obligations thereunder, whether such obligations exist now or arise at any time or times after the date of this Surety Agreement without regard to the validity, enforceability or regularity thereof, including, without limitation, interest as accrues thereon in accordance with the terms thereof and any reasonable costs or legal expenses incurred by SCF in the collection and enforcement thereof; and, (b) the prompt, full and faithful performance, observance, and discharge of each and every term, condition, agreement, representation, warranty, undertaking, covenant, guaranty and provision to be performed, observed, or discharged by all other obligations and provisions to be performed by the Customer and any surety or guarantor of the obligations (any such person being called an "Obligor") under the terms of the SCF Agreements; and, (c) the Obligor's prompt payment in full, when due or declared due and at all times thereafter, of all indebtedness, liability or liabilities of any and every kind and nature now or at any time or times after the date of this Surety Agreement, whether owing, arising, due or payable from Obligor to SCF, howsoever evidenced, created, incurred, acquired, or owing, whether primary, secondary, direct, contingent, fixed or otherwise, and whether arising under any other agreements with SCF, whether now existing or at any time or times after the date of this Surety Agreement executed by Surety and delivered to SCF (with all obligations under (a), (b) and (c) being collectively referred to as "Obligations"). Surety agrees that Surety is directly and primarily liable, (and if more than one person is signing this Surety Agreement, that they are liable jointly and severally with Surety and with all other guarantors of the Obligations), for performance of the Obligations and that SCF's entry into the SCF Transactions shall be a direct economic benefit to Surety.
2.  Assents to all agreements made or to be made between SCF and any other person liable, either absolutely or contingently, on any Obligations, including Customer and any surety or guarantor of the Obligations, and further agrees that Surety's liability hereunder shall not be reduced or diminished by such agreements in any way;
3.  Consents that SCF may, at its election and without in any way affecting Surety's liability hereunder: (a) exchange, surrender or release any or all collateral security or any endorsement, guaranty or surety held by SCF for any of the Obligations; (b) renew, extend, modify supplement, amend, release, alter or compromise the terms of any or all of the Obligations; (c) apply any payments received on account of any of the Obligations to or on account of such of the Obligations, in such order, as SCF in its sole discretion may elect; and (d) waive or fail to perfect any of SCF's rights or remedies against Customer or the collateral security for any of the Obligations; and
4.  Warrants that the address specified herein, immediately below Surety's name, is Surety's current and correct residence address if Surety is a natural person, or principal place of business address if Surety is a corporation, partnership, or other legal entity, and agrees to notify SCF, in the manner hereinafter specified, within three days of any change in Surety's address.

CONTINUING SURETY. This Surety Agreement shall be a continuing one and shall be binding upon Surety regardless of how long before or after the date hereof any of the Obligations was or is incurred or the fact that the Obligations may be paid in full at any time and from time-to-time; provided, however, that Surety, and if more than one, any Surety, may give SCF written notice, in the manner hereinafter specified, of such Surety's intention to exclude from that Surety's liabilities hereunder any Obligations incurred on or after the Effective Date of such notice. The "Effective Date" of any such notice is defined as the fifth business day following proper receipt by SCF thereof or, if later, the date specified therein. It is expressly provided, however, that no such notice shall reduce, diminish or release the notifying Surety's liabilities hereunder with respect to any Obligations that are incurred prior to the Effective Date of such notice, any Obligations that constitute renewals, extension or modifications of such Obligations, and any reasonable costs and legal expenses incurred by SCF in the collection and enforcement of such Obligations or this Surety Agreement.

EXTENT OF SURETY'S LIABILITY. Surety's liability hereunder shall be unlimited. It is expressly agreed by Surety that SCF may apply any payments received on account of the Obligations in such manner as not to decrease Surety's liability hereunder.

UNCONDITIONAL LIABILITY. Surety's liability hereunder is absolute and unconditional and shall not be reduced, diminished or released in any way by reason of: (a) any failure by SCF to obtain, retain, preserve, perfect or enforce any rights against any person (including without limitation, any Obligor) or in any property securing any or all of the Obligations; (b) the invalidity of irregularity of any such rights which SCF may attempt to obtain; (c) any delay in enforcing or any failure to enforce such rights, even if such rights are thereby lost; (d) any delay in making demand on any Obligor for payment or performance of any or all of the Obligations; or (e) from time-to-time, the payment in full and subsequent incurring of any Obligations. In the event that this Surety Agreement is preceded or followed by any other guaranty or surety agreement regarding Customer or any other person, all rights granted SCF in such agreement shall be deemed to be cumulative and this Surety Agreement shall not, in such event, be deemed canceled, superseded or terminated.

Page 1 of 3

WAIVERS. Surety hereby waives all notices of any and every character whatsoever, with respect to this Surety Agreement and the Obligations including, but not limited to notice of the present existence or future incurring of any Obligations, the amount, terms and conditions thereof and any defaults thereon. Surety hereby consents to the taking, or failure to take, from time to time and without notice to Surety, of any action of any nature whatsoever with respect to the Obligations and with respect to any rights against any person or persons (including, without limitation, any Obligor), or in any property, including, without limitation, any renewals, extensions, modifications, postponements, compromises, indulgences, waivers, surrenders, exchanges and releases, and Surety will remain fully liable hereunder notwithstanding any or all of the foregoing. The granting of an express written release of any Surety's liability shall be effective only with respect to the liability hereunder of any one or more Sureties who are specifically so expressly released but shall in no way affect the liability hereunder of any Surety not so expressly released. The death or incapacity of any Surety shall in no way affect the liability hereunder of that or any other Surety, except as provided herein. Surety waives the benefit of all laws now or hereafter in force, which in any way limit or restrict the liability of Surety hereunder, including without limitation: (a) all defenses whatsoever to Surety's liability hereunder; and (b) all rights to stay of execution of property in any action to enforce the liability of Surety hereunder. Surety hereby expressly waives: (a) notices of the acceptance hereof; and (b) any presentment, demand, protest, dishonor, notice of dishonor or any other notice of any kind; and (c) any right of indemnification and any and all other rights at law or in equity of a surety and/or a guarantor. So long as the Obligations have not been paid or performed in full, no payment by any Surety shall entitle Surety, by subrogation, contribution, indemnification or otherwise, to succeed to any of the rights of SCF, including rights to any payment made on account of the Obligations, regardless of the source of such payment. In any event, if Surety is an "insider", as this term is defined in the Federal Bankruptcy Code, Surety waives any and all rights it may have, by subrogation, contribution, indemnification or otherwise, to succeed to any of the rights of SCF Surety hereby waives any benefit of and any right to participate in any collateral security now or hereafter held by SCF or any failure or refusal by SCF to perfect an interest in any collateral security.

SATISFACTION. In the event that the Obligations are satisfied in full by Surety, SCF shall return this Agreement to Surety marked "satisfied" only upon the express written request of Surety. In the event that the Obligations are satisfied in full by Customer, SCF shall return this Agreement to Surety marked "satisfied" only upon the express written request of Surety and then only upon the expiration of 91 days from the date of the last payment on the Obligations by Customer; provided, however, that if, during the 91 days immediately following payment on the Obligations by Customer, a Petition is filed by or against Customer or any Surety under any provision of the Federal Bankruptcy Code, then SCF shall not return or mark "satisfied" this Agreement until either: (1) the Court enters an order ratifying the payment to Susquehanna Commercial Finance, Inc. by Customer of the Obligations as not violating any provision of the Bankruptcy Code or being such as not to be recoverable for the bankruptcy estate by the trustee; or (2) the proceedings have been finally determined. In the event that the trustee in bankruptcy or anyone acting in his stead, including a debtor-in-possession, seeks to recover any payment or any portion thereof from SCF for the bankruptcy estate under any provision of the Bankruptcy Code, Surety will protect, defend, and hold SCF harmless with respect to such attempted recovery against SCF by the bankruptcy estate and Surety hereby further consents to the SCF's joining Surety as an additional defendant in such action. In the event that the bankruptcy estate does so recover any such payment or portion thereof under the Federal Bankruptcy Code, then and in that event Surety will immediately pay to SCF all sums so recovered together with all costs of collection and all cost incurred by SCF, including attorney's fees, in connection with the bankruptcy proceedings.

PAYMENTS OF COSTS. In addition to all other liabilities of Surety hereunder, Surety also agrees to pay to SCF on demand all costs and expenses (including SCF's reasonable attorney's fees and court costs) which may be incurred in the collection and enforcement of Surety's liabilities hereunder.

ACCELERATION OF SURETY'S LIABILITIES. Upon the occurrence of any of the following events, all of the Obligations shall, at SCF's election, be deemed to be forthwith due and payable for the purposes of this Surety Agreement and for determining the liability of Surety hereunder, whether or not SCF has any such rights against any other Obligor, and whether or not SCF elects to exercise any rights or remedies against any other person or property, including, without limitation, any other Obligor: (1) the nonpayment when due of any amount payable under or on any of the Obligations, or the failure of any Obligor or Surety to observe or perform any term or condition of any SCF Agreement or any agreement with any affiliate of SCF; (2) if Surety becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against Surety under any provision of any state or federal law or statute alleging that Surety is insolvent or unable to pay debts as they mature or under any provision of the United States Bankruptcy Code; (3) other than pursuant hereto, the entry of any judgment against Surety which remains unsatisfied for fifteen (15) days or the issuing of any attachment, levy or garnishment against any property of Surety or the occurrence of any substantial change in the financial condition of Surety which, in the sole, reasonable judgment of SCF, is materially adverse; (4) the sale of or substantially all of the assets, or change in ownership, control or management, or the dissolution, merger, consolidation or reorganization of any Surety, if such Surety is a corporation or partnership, without the express prior written consent of SCF; (5) the death, incarceration or adjudication of legal incompetence of any Surety, or any general partner or Surety, if Surety is a natural person or partnership; (6) if at any time any information or signature furnished to SCF by Surety, or delivered to SCF by any Obligor in connection with any of the Obligations, is materially false or incorrect; (7) the failure of Surety to promptly furnish SCF such financial and other information as SCF may reasonable request or require; or (8) the occurrence of any default or defined "Event of Default" under any agreement between Surety and SCF or any affiliate of SCF; or any Obligor and SCF or affiliate of SCF.

NOTICE TO SCF BY SURETY. Any notice to SCF by Surety pursuant to the provisions hereof shall be sent postage prepaid, by certified mail, return receipt requested, to:
    Susquehanna Commercial Finance, Inc.
    2 Country View Road, Suite 300, Malvern, PA 19355

Notice by any Surety shall not, in any way, diminish or release the liability of any other Surety.

MISCELLANEOUS. This Surety Agreement shall be binding upon Surety and Surety's heirs, executors, administrators, successors, assigns and other legal
Page 2 of 3

representatives, and shall inure to the benefit of SCF, its endorsers, successors and assigns forever. If any provision of this Surety Agreement shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Surety Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

All matters arising hereunder shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. The parties knowingly and voluntarily agree to the jurisdiction of the Federal and State Courts in the Commonwealth of Pennsylvania, or at SCF's option, the state of Surety. If this Surety Agreement is assigned by SCF, in any legal action relating to this Surety Agreement, Surety consents and submits to the jurisdiction and venue of the state and Federal courts situated in the state in which the principal place of business of SCF's assignee is situated, at such assignee's sole option.

**WAIVER OF JURY TRIAL.** Surety knowingly and voluntarily waives the right to trial by jury in any matter or proceeding relating to this Transaction.

This Surety Agreement has been signed and sealed this ⇨ __8__ day of __Dec__, 20 __15__ ⇦

INDIVIDUALS SIGN BELOW

☒ _[signature]_  
Signature (NO TITLE)  
RYAN     HUMPHREY  
Print Name

☒ _[signature]_  
Signature (NO TITLE)  
STEPHANIE     HUMPHREY  
Print Name

Home Phone #: ⇨ 910-458-1677  
☒ _Rami Goodwell_  
Witness  
458-1677  
Home Phone #: ⇨ 910-458-1677  
☒  
Witness

> By signing this document above, I hereby acknowledge that I have fully read pages 1, 2, and 3

Page 3 of 3

## SURETY AGREEMENT

INTENDING TO BE LEGALLY BOUND and to induce SUSQUEHANNA COMMERCIAL FINANCE, INC., a Pennsylvania corporation with an office at 2 Country View Road, Suite 300, Malvern, PA 19355 ("SCF"), and in consideration of SCF's grant of credit accommodations extended now or in the future to HAPPY CLAM HOLDINGS, INC. (herein called "Customer"), in transactions where Customer is obligor, whether: (a) as a lessee under any lease agreements, master lease agreements (together with all schedules executed in connection with such master lease agreements), agreements granting lease availability or credit, and all other agreements related to the transactions contemplated in connection with all such lease agreements (as well as riders to such agreements); and/or (b) as a borrower, debtor, obligor, or other recipient of credit under the terms of any notes, loan agreements, security agreements, "Commercial Finance Agreements", equipment finance agreements conditional sales agreements (as well as riders to such agreements), instruments, documents, mortgages, assignments or other contracts or arrangements whereby SCF shall grant credit or advance funds; and/or (c) under any agreement of guaranty or suretyship in favor of SCF, where Customer is a surety or guarantor guaranteeing or acting as surety with respect to the performance of obligations to SCF by another obligor (with the transactions described in (a), (b) and (c) being referred to as "SCF Transactions"), whether such SCF Transactions have occurred in the past or contemporaneously with the execution of this Surety Agreement, or shall arise in the future, and whether the agreements evidencing the SCF Transactions, together with all related guaranty agreements, (to be referred collectively herein as "SCF Agreements") have been executed, or shall be executed by Customer at any time in the future, the undersigned (individually and collectively referred to as "Surety", whether it be one or more persons):

1.  Agrees to unconditionally, absolutely and irrevocably becomes surety to, and guarantees to SCF and to its successors, endorsees and assigns for the performance of the following obligations: (a) the prompt payment in full of all indebtedness, liability or liabilities of any and every kind and nature by the Customer as required under the terms of the SCF Agreements and performance of all obligations thereunder, whether such obligations exist now or arise at any time or times after the date of this Surety Agreement without regard to the validity, enforceability or regularity thereof, including, without limitation, interest as accrues thereon in accordance with the terms thereof and any reasonable costs or legal expenses incurred by SCF in the collection and enforcement thereof; and, (b) the prompt, full and faithful performance, observance, and discharge of each and every term, condition, agreement, representation, warranty, undertaking, covenant, guaranty and provision to be performed, observed, or discharged by all other obligations and provisions to be performed by the Customer and any surety or guarantor of the obligations (any such person being called an "Obligor") under the terms of the SCF Agreements; and, (c) the Obligor's prompt payment in full, when due or declared due and at all times thereafter, of all indebtedness, liability or liabilities of any and every kind and nature now or at any time or times after the date of this Surety Agreement, whether owing, arising, due or payable from Obligor to SCF, howsoever evidenced, created, incurred, acquired, or owing, whether primary, secondary, direct, contingent, fixed or otherwise, and whether arising under any other agreements with SCF, whether now existing or at any time or times after the date of this Surety Agreement executed by Surety and delivered to SCF (with all obligations under (a), (b) and (c) being collectively referred to as "Obligations"). Surety agrees that Surety is directly and primarily liable, (and if more than one person is signing this Surety Agreement, that they are liable jointly and severally with Surety and with all other guarantors of the Obligations), for performance of the Obligations and that SCF's entry into the SCF Transactions shall be a direct economic benefit to Surety.
2.  Assents to all agreements made or to be made between SCF and any other person liable, either absolutely or contingently, on any Obligations, including Customer and any surety or guarantor of the Obligations, and further agrees that Surety's liability hereunder shall not be reduced or diminished by such agreements in any way;
3.  Consents that SCF may, at its election and without in any way affecting Surety's liability hereunder: (a) exchange, surrender or release any or all collateral security or any endorsement, guaranty or surety held by SCF for any of the Obligations; (b) renew, extend, modify supplement, amend, release, alter or compromise the terms of any or all of the Obligations; (c) apply any payments received on account of any of the Obligations to or on account of such of the Obligations, in such order, as SCF in its sole discretion may elect; and (d) waive or fail to perfect any of SCF's rights or remedies against Customer or the collateral security for any of the Obligations; and
4.  Warrants that the address specified herein, immediately below Surety's name, is Surety's current and correct residence address if Surety is a natural person, or principal place of business address if Surety is a corporation, partnership, or other legal entity, and agrees to notify SCF, in the manner hereinafter specified, within three days of any change in Surety's address.

CONTINUING SURETY. This Surety Agreement shall be a continuing one and shall be binding upon Surety regardless of how long before or after the date hereof any of the Obligations was or is incurred or the fact that the Obligations may be paid in full at any time and from time-to-time; provided, however, that Surety, and if more than one, any Surety, may give SCF written notice, in the manner hereinafter specified, of such Surety's intention to exclude from that Surety's liabilities hereunder any Obligations incurred on or after the Effective Date of such notice. The "Effective Date" of any such notice is defined as the fifth business day following proper receipt by SCF thereof or, if later, the date specified therein. It is expressly provided, however, that no such notice shall reduce, diminish or release the notifying Surety's liabilities hereunder with respect to any Obligations that are incurred prior to the Effective Date of such notice, any Obligations that constitute renewals, extension or modifications of such Obligations, and any reasonable costs and legal expenses incurred by SCF in the collection and enforcement of such Obligations or this Surety Agreement.

EXTENT OF SURETY'S LIABILITY. Surety's liability hereunder shall be unlimited. It is expressly agreed by Surety that SCF may apply any payments received on account of the Obligations in such manner as not to decrease Surety's liability hereunder.

UNCONDITIONAL LIABILITY. Surety's liability hereunder is absolute and unconditional and shall not be reduced, diminished or released in any way by reason of: (a) any failure by SCF to obtain, retain, preserve, perfect or enforce any rights against any person (including without limitation, any Obligor) or in any property securing any or all of the Obligations; (b) the invalidity of irregularity of any such rights which SCF may attempt to obtain; (c) any delay in enforcing or any failure to enforce such rights, even if such rights are thereby lost; (d) any delay in making demand on any Obligor for payment or performance of any or all of the Obligations; or (e) from time-to-time, the payment in full and subsequent incurring of any Obligations. In the event that this Surety Agreement is preceded or followed by any other guaranty or surety agreement regarding Customer or any other person, all rights granted SCF in such agreement shall be deemed to be cumulative and this Surety Agreement shall not, in such event, be deemed canceled, superseded or terminated.

Page 1 of 3

WAIVERS. Surety hereby waives all notices of any and every character whatsoever, with respect to this Surety Agreement and the Obligations including, but not limited to notice of the present existence or future incurring of any Obligations, the amount, terms and conditions thereof and any defaults thereon. Surety hereby consents to the taking, or failure to take, from time to time and without notice to Surety, of any action of any nature whatsoever with respect to the Obligations and with respect to any rights against any person or persons (including, without limitation, any Obligor), or in any property, including, without limitation, any renewals, extensions, modifications, postponements, compromises, indulgences, waivers, surrenders, exchanges and releases, and Surety will remain fully liable hereunder notwithstanding any or all of the foregoing. The granting of an express written release of any Surety's liability shall be effective only with respect to the liability hereunder of any one or more Sureties who are specifically so expressly released but shall in no way affect the liability hereunder of any Surety not so expressly released. The death or incapacity of any Surety shall in no way affect the liability hereunder of that or any other Surety, except as provided herein. Surety waives the benefit of all laws now or hereafter in force, which in any way limit or restrict the liability of Surety hereunder, including without limitation: (a) all defenses whatsoever to Surety's liability hereunder; and (b) all rights to stay of execution of property in any action to enforce the liability of Surety hereunder. Surety hereby expressly waives: (a) notices of the acceptance hereof; and (b) any presentment, demand, protest, dishonor, notice of dishonor or any other notice of any kind; and (c) any right of indemnification and any and all other rights at law or in equity of a surety and/or a guarantor. So long as the Obligations have not been paid or performed in full, no payment by any Surety shall entitle Surety, by subrogation, contribution, indemnification or otherwise, to succeed to any of the rights of SCF, including rights to any payment made on account of the Obligations, regardless of the source of such payment. In any event, if Surety is an "insider", as this term is defined in the Federal Bankruptcy Code, Surety waives any and all rights it may have, by subrogation, contribution, indemnification or otherwise, to succeed to any of the rights of SCF Surety hereby waives any benefit of and any right to participate in any collateral security now or hereafter held by SCF or any failure or refusal by SCF to perfect an interest in any collateral security.

SATISFACTION. In the event that the Obligations are satisfied in full by Surety, SCF shall return this Agreement to Surety marked "satisfied" only upon the express written request of Surety. In the event that the Obligations are satisfied in full by Customer, SCF shall return this Agreement to Surety marked "satisfied" only upon the express written request of Surety and then only upon the expiration of 91 days from the date of the last payment on the Obligations by Customer; provided, however, that if, during the 91 days immediately following payment on the Obligations by Customer, a Petition is filed by or against Customer or any Surety under any provision of the Federal Bankruptcy Code, then SCF shall not return or mark "satisfied" this Agreement until either: (1) the Court enters an order ratifying the payment to Susquehanna Commercial Finance, Inc. by Customer of the Obligations as not violating any provision of the Bankruptcy Code or being such as not to be recoverable for the bankruptcy estate by the trustee; or (2) the proceedings have been finally determined. In the event that the trustee in bankruptcy or anyone acting in his stead, including a debtor-in-possession, seeks to recover any payment or any portion thereof from SCF for the bankruptcy estate under any provision of the Bankruptcy Code, Surety will protect, defend, and hold SCF harmless with respect to such attempted recovery against SCF by the bankruptcy estate and Surety hereby further consents to the SCF's joining Surety as an additional defendant in such action. In the event that the bankruptcy estate does so recover any such payment or portion thereof under the Federal Bankruptcy Code, then and in that event Surety will immediately pay to SCF all sums so recovered together with all costs of collection and all cost incurred by SCF, including attorney's fees, in connection with the bankruptcy proceedings.

PAYMENTS OF COSTS. In addition to all other liabilities of Surety hereunder, Surety also agrees to pay to SCF on demand all costs and expenses (including SCF's reasonable attorney's fees and court costs) which may be incurred in the collection and enforcement of Surety's liabilities hereunder.

ACCELERATION OF SURETY'S LIABILITIES. Upon the occurrence of any of the following events, all of the Obligations shall, at SCF's election, be deemed to be forthwith due and payable for the purposes of this Surety Agreement and for determining the liability of Surety hereunder, whether or not SCF has any such rights against any other Obligor, and whether or not SCF elects to exercise any rights or remedies against any other person or property, including, without limitation, any other Obligor: (1) the nonpayment when due of any amount payable under or on any of the Obligations, or the failure of any Obligor or Surety to observe or perform any term or condition of any SCF Agreement or any agreement with any affiliate of SCF; (2) if Surety becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against Surety under any provision of any state or federal law or statute alleging that Surety is insolvent or unable to pay debts as they mature or under any provision of the United States Bankruptcy Code; (3) other than pursuant hereto, the entry of any judgment against Surety which remains unsatisfied for fifteen (15) days or the issuing of any attachment, levy or garnishment against any property of Surety or the occurrence of any substantial change in the financial condition of Surety which, in the sole, reasonable judgment of SCF, is materially adverse; (4) the sale of or substantially all of the assets, or change in ownership, control or management, or the dissolution, merger, consolidation or reorganization of any Surety, if such Surety is a corporation or partnership, without the express prior written consent of SCF; (5) the death, incarceration or adjudication of legal incompetence of any Surety, or any general partner or Surety, if Surety is a natural person or partnership; (6) if at any time any information or signature furnished to SCF by Surety, or delivered to SCF by any Obligor in connection with any of the Obligations, is materially false or incorrect; (7) the failure of Surety to promptly furnish SCF such financial and other information as SCF may reasonable request or require; or (8) the occurrence of any default or defined "Event of Default" under any agreement between Surety and SCF or any affiliate of SCF; or any Obligor and SCF or affiliate of SCF.

NOTICE TO SCF BY SURETY. Any notice to SCF by Surety pursuant to the provisions hereof shall be sent postage prepaid, by certified mail, return receipt requested, to:
 Susquehanna Commercial Finance, Inc.
 2 Country View Road, Suite 300, Malvern, PA 19355

Notice by any Surety shall not, in any way, diminish or release the liability of any other Surety.

MISCELLANEOUS. This Surety Agreement shall be binding upon Surety and Surety's heirs, executors, administrators, successors, assigns and other legal
Page 2 of 3

representatives, and shall inure to the benefit of SCF, its endorsers, successors and assigns forever. If any provision of this Surety Agreement shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Surety Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

All matters arising hereunder shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. The parties knowingly and voluntarily agree to the jurisdiction of the Federal and State Courts in the Commonwealth of Pennsylvania, or at SCF's option, the state of Surety. If this Surety Agreement is assigned by SCF, in any legal action relating to this Surety Agreement, Surety consents and submits to the jurisdiction and venue of the state and Federal courts situated in the state in which the principal place of business of SCF's assignee is situated, at such assignee's sole option.

**WAIVER OF JURY TRIAL.** Surety knowingly and voluntarily waives the right to trial by jury in any matter or proceeding relating to this Transaction.

This Surety Agreement has been signed and sealed this ⇨ 8th day of December, 20 15 ⇦

INDIVIDUALS SIGN BELOW

| ☒ _____ | Home Phone #: ⇨ _____ |
| Signature                (NO TITLE) | |
| RYAN    HUMPHREY | ☒ _____ |
| Print Name | Witness |
| ☒ /s/ Stephanie Humphrey | Home Phone #: ⇨ 910-458-1677 |
| Signature                (NO TITLE) | |
| STEPHANIE   HUMPHREY | ☒ /s/ J Darling |
| Print Name | Witness |

> **By signing this document above, I hereby acknowledge that I have fully read pages 1, 2, and 3**

GEKP

17 3387

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BB&T Commercial Equipment Capital Corp. F/K/A Susquehanna Commercial Finance, Inc.

**DEFENDANTS**
Happy Clam Holdings, Inc.. AND Ryan Humphrey AND Stephanie Humphrey, i/j/s

(b) County of Residence of First Listed Plaintiff  **Chester**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **New Hanover**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Barbara Lanza Farley, A Professional Corporation
PO Box 53659
Philadelphia, PA  19105  215-923-9696

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
**28 USC 1391**
Brief description of cause:
**Payment default of Loan and Security Agreement and 2 Surety Agreements**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 250,588.75
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  07/28/2017
SIGNATURE OF ATTORNEY OF RECORD

JUL 28 2017

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

GEKP

17 3387

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2 Great Valley Parkway Suite 300 Malvern PA 19355

Address of Defendant: 134 Myrtle Avenue Carolina Beach NC 28428

Place of Accident, Incident or Transaction: 2 Great Valley Parkway Suite 300 Malvern PA 19355
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☒   No☐

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. Diversity Jurisdiction Cases:
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, Barbara L. Farley, Esquire, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 7/28/17   _____   18845
             Attorney-at-Law           Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

JUL 28 2017

DATE: 7/28/17   _____   18845
             Attorney-at-Law           Attorney I.D.#

CIV. 609 (5/2012)



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

BB2T Commercial Equipment Capital Corp  
F/K/A Susquehanna Commercial Finance, Inc  
         v.  
Happy Clam Holdings, Inc. And Ryan Humphrey And Stephanie Humphrey, I/H/s

CIVIL ACTION

NO. **17  3387**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x)

_7/28/17_      _Barbara L. Farley, Esq_      _[signature]_  
**Date**      **Attorney-at-law**      **Attorney for** _Plaintiff_

_215 923 9696_      _856 428 3995_      _blfpclaw@gmail.com_  
**Telephone**      **FAX Number**      **E-Mail Address**

(Civ. 660) 10/02

JUL 28 2017